## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE: ABILIFY (ARIPIPRAZOLE)
PRODUCTS LIABILITY LITIGATION,          Case No. 3:16-md-2734

                                        Judge M. Casey Rodgers
                                        Magistrate Judge Gary R. Jones

This Document Relates to:

*Tomela Sue Smith*
Case No. 3:17-cv-474
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary

Judgment.  ECF No. 25.  Plaintiff has filed a response in opposition, ECF

No. 30-1 (sealed),[1] and Defendants filed a reply in support of their motion,

ECF No. 32.  The district court referred the instant motion to the

undersigned for further proceedings and the preparation of a report and

recommendation.  ECF No.  34.  It is, therefore, ripe for consideration.

For the reasons discussed below, it is respectfully **RECOMMENDED**

that Defendants' Motion for Summary Judgment should be **DENIED**.  In

short, there is a genuine issue of material fact as to whether Utah's learned

---

[1] The public, redacted version of Plaintiff's response in opposition to Defendants' motion for summary judgment, ECF No. 30, is not for this individual case.   The Court, therefore, relied on the sealed, unredacted version of the response memorandum, ECF No. 30-1. Plaintiff's counsel **must** contact the Clerk of Court to correct this error and ensure a sealed version of the response memorandum is available on the public CM/ECF docket.

intermediary rule precludes a finding of proximate causation on Plaintiff's
failure to warn claim, and Defendants' argument for summary judgment on
Plaintiff's remaining claims—that Plaintiff has produced no evidence to
support them—is without merit.

## I.  BACKGROUND

This is a products liability action against Defendants Bristol-Myers
Squibb Co., Otsuka America Pharmaceutical, Inc., and Otsuka
Pharmaceutical Co., Ltd., concerning Plaintiff's use of the atypical
antipsychotic drug Aripiprazole, commonly known by its trade name
"Abilify."  ECF No. 1; ECF No. 30-2 at 8.  Since 2002, the FDA has
approved Abilify for prescription to patients diagnosed with schizophrenia,
bipolar disorder, major depressive disorder, irritability (associated with
autistic disorder in pediatric patients), and Tourette's Syndrome.  ECF No.
30-2 at 8.  Abilify's original label did not include any statement in the
"Warnings and Precautions" section regarding impulsive urges to engage in
harmful behavior, such as pathological gambling, binge eating,
hypersexuality, and compulsive shopping.  *Id.* at 9.[2]  Although the

---

[2] In two instances in 2006 and 2007, Defendants intermittently added "impulsive behavior"
as an "infrequent psychiatric disorder to the Adverse Reactions – Other Adverse Events
Observed" section of Abilify's United States label, but they removed the statement from
the label shortly thereafter.  ECF No. 30-2 at 9–11.  When the FDA approved Abilify for
treatment of major depressive disorder on November 16, 2007, Defendants added to

European Medicines Agency and Health Canada required Defendants to

include such warnings on Abilify's label in November 2012, and February

2015, respectively, following safety reviews by those foreign agencies, the

FDA did not request Defendants modify Abilify's United States product

label to include warnings of pathological gambling and impulse control

problems until May 2016. *Id.* at 20, 22, 27.

Defendants modified Abilify's United States product label in August

2016 to advise of the following:

> Post-marketing case reports suggest that patients can experience intense urges, particularly for gambling, and the inability to control these urges while taking aripiprazole. Other compulsive urges, reported less frequently include: sexual urges, shopping, eating or binge eating, and other impulsive or compulsive behaviors. Because patients may not recognize these behaviors as abnormal, it is important for prescribers to ask patients or their caregivers specifically about the development of new or intense gambling urges, compulsive sexual urges, compulsive shopping, binge or compulsive eating, or other urges while being treated with aripiprazole. It should be noted that impulse-control symptoms can be associated with the underlying disorder. In some cases, although not all, urges were reported to have stopped when the dose was reduced or the medication was discontinued. Compulsive behaviors may result in harm to the patient and others if not recognized. Consider dose reduction or stopping the medication if a patient develops such urges.

*Id.* at 29.

---

Abilify's United States label a warning listing "impulsivity" as a symptom, referring to it as a "precursor[] to emerging suicidality." *Id.* at 11.

Plaintiff is a Registered Nurse.  ECF No. 30-3.  She has been diagnosed with and treated for a host of psychiatric disorders during her lifetime, some of which trace back through her family history or stem from traumatic events.  ECF No. 25-2 at 4.  Relevant here, Plaintiff was initially prescribed Abilify by a physician in August 2007, but she stopped using the drug a few months later due to the "odd side effect of [her] mouth twitching."  ECF No. 30-3 at 1.  Plaintiff says in her sworn declaration that Advanced Practice Registered Nurse Rose Olds prescribed her Abilify in April 2009[3] at "a much lower dose" than her 2007 prescription.  *Id.* at 2. Plaintiff filled the prescriptions for Abilify and read the "prescribing information when [she] first received the medication from the pharmacy." *Id.*[4]  Plaintiff states that the "prescribing information" did not include a warning about compulsive gambling because, if it did, she would have: (1) recalled the warning when she began compulsively gambling; (2) raised the issue with Nurse Olds when she began compulsively gambling; and (3) stopped taking Abilify.  *Id.*  Plaintiff stopped using Abilify in 2014.  ECF No. 25 at 14; ECF No. 30-1 at 5.

---

[2] Defendants contest this assertion based on Plaintiff's pharmacy records, which, they say, reflect that Plaintiff started using Abilify in June 2010. ECF No. 25 at 13.

[4] *See also* ECF No. 30-4 at 6 ("I always read the drug—at the pharmacy when they hand them to you, I read them."); ECF No. 32-1 at 4 ("I read what the pharmacist gave me in the insert packet when I would start a new medicine, every time.").

4

Nurse Olds testified during her deposition that she did not read the Abilify product label "every single time [she] prescribed it to a patient" and could not recall the last time she looked at the "package insert" before prescribing Abilify to Plaintiff in 2009.  ECF No. 25-3 at 25.  In deciding whether to prescribe Abilify to Plaintiff, Nurse Olds considered Plaintiff's past and current prescriptions, Plaintiff's objectives in taking an antipsychotic medication, and side effect profiles.  *Id.*  Nurse Olds did not recall discussing with Plaintiff the potential risks and benefits of Abilify or whether she looked at the package insert for Abilify before prescribing it to Plaintiff.  *Id.* at 26–27.

When Plaintiff advised Nurse Olds of the association between the use of Abilify and compulsive gambling, Nurse Olds reviewed the drug's package insert.  *Id.* at 42.  Nurse Olds stated that had she known that pathological gambling was a potential side effect of taking Abilify when Plaintiff reported having a gambling addiction on November 1, 2011, she would have stopped prescribing Abilify and "put her on something else." *Id.* at 46.  Indeed, Nurse Olds explained that she could not force any patient to take a drug the patient is not "comfortable" taking. *Id.* at 48.

Plaintiff has pleaded claims against Defendants for strict products liability, breach of express warranty, breach of implied warrant, negligence,

5

negligence per se, negligent misrepresentation, violation of Utah consumer protection laws, and fraudulent concealment. ECF No. 1 at 4. As to relief, she alleges that Defendants are liable for economic losses (in excess of $10,000), neuropsychiatric and physical injury, and emotional distress stemming from her use of Abilify between June 2010 and June 2014. *Id.* at 3. Plaintiff also seeks punitive damages against Defendants. *Id.* at 4. This case was consolidated in multidistrict litigation for the coordination of pretrial proceedings. 28 U.S.C. § 1407. Plaintiff was eligible to participate in the MDL settlement program established by the parties, but she elected to continue litigating her claims on an individual basis. ECF No. 9.

Defendants deny any wrongdoing, claiming specifically that Abilify was safe for its intended and foreseeable use and was provided with adequate instructions and warnings concerning its use. ECF No. 13 at 4; ECF No. 14 at 9, 17; ECF No. 15 at 9, 16. Defendants now move for summary judgment on all of Plaintiff's claims. ECF No. 25.

## II. LEGAL STANDARD

The entry of summary judgment is appropriate when the Court is satisfied "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court must examine the pleadings,

depositions, answers to interrogatories, and admissions on file, together

with any affidavits and other evidence in the record "in the light most

favorable to the nonmoving party."  *Samples on Behalf of Samples v.

Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).  "The nonmovant need not

be given the benefit of every inference but only of every reasonable

inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282

(11th Cir. 1999).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986), the moving party bears the initial burden of establishing the

nonexistence of a triable issue of fact.  If the movant is successful on this

score, the burden of production shifts to the non-moving party who must

then come forward with "sufficient evidence of every element that he or she

must prove."  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.

1987).  The non-moving party may not simply rest on the pleadings, but

must use affidavits, depositions, answers to interrogatories, or other

admissible evidence to demonstrate that a material fact issue remains to be

tried.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986);

*Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir.

2005).  Conclusory allegations based on subjective beliefs are insufficient

7

to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212

F.3d 1210, 1217 (11th Cir. 2000).

## III. DISCUSSION

Defendants' motion for summary judgment is divided neatly into two

arguments.[5] First, Defendants argue that Utah's learned intermediary rule

precludes a finding of proximate causation on Plaintiff's failure to warn

claim because Nurse Olds did not rely on the Abilify product label (or

"package insert") when she prescribed the drug to Plaintiff. ECF No. 25 at

19–26. Second, Defendants argue they are entitled to summary judgment

because Plaintiff "cannot prevail on" or has otherwise failed to produce

evidence in support of her claims for strict liability, breach of express

warranty, breach of implied warranty, negligence per se, fraudulent

---

[5] As Plaintiff points out, Defendants inexplicably "spend pages detailing the acts of Plaintiff in supposedly failing to preserve Nurse Olds' medical notes from inadvertent destruction by Nurse Olds." ECF No. 30-1 at 25. In their initial motion, Defendants do not argue (or at least provide legal authority suggesting that) summary judgment is warranted on this basis. ECF No. 25 at 17–21. Defendants' reply memorandum further confuses the issue because they concede they are not requesting sanctions against Plaintiff for the destruction of her medical records, at this time, but assert that "this destruction of evidence affects the reasonableness of inferences that the Plaintiff asks the Court to draw regarding whether a different warning would have affected [Nurse] Olds' prescribing decision." ECF No. 32 at 10. Again, this assertion is devoid of legal citation in support thereof. *Id.* The Court will not entertain this undeveloped argument on summary judgment. *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed waived."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments.").

concealment, and punitive damages.  *Id.* at 30–32.  Neither warrants summary judgment.

## A.  Failure to Warn and the Learned Intermediary Rule

The thrust of Plaintiff's case is that Defendants are liable for her injuries because they failed to provide an adequate warning that taking Abilify caused compulsive gambling and impulsive urges.  *See Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 835 (Utah 1985) (a manufacturer is "directly liable to the patient for the breach of" its duty to make "timely and adequate warnings to the medical profession of any dangerous side effects produced by its drugs of which it knows or has reason to know").[6]

In Utah, a "failure to warn" claim may arise under strict liability and negligence.  *See Feasel v. Tracker Marine LLC*, 460 P.3d 145, 152 (Utah Ct. App. 2020) (explaining the elements of a strict liability failure to warn claim); *Christison v. Biogen Idec Inc.*, No. 2:11-cv-1140-DN-DBP, 2014 WL 7261300, at *8 (D. Utah Dec. 18, 2014) (explaining the elements of a negligent failure to warn claim); *see also In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, No. 2:18-md-2846, 2020 WL 5223363, at *16 (S.D. Ohio Sept. 1, 2020).  Under either legal theory,

---

[6] The parties agree that Utah law governs Plaintiff's causes of action against Defendants, but Plaintiff reserves on the issue of whether Utah law governs her claim for punitive damages.

however, the plaintiff must prove proximate causation, i.e. "that the failure to give an adequate warning in fact caused the injury[.]"  *House v. Armour of Am., Inc.*, 929 P.2d 340, 346 (Utah 1996).  Put simply, the plaintiff "must show … that had warnings been provided, the injured party would have altered his use of the product or taken added precautions to avoid the injury."  *Id.*  Conversely, "if the event which produced the injury would have occurred regardless of the defendant's conduct, then the failure to provide a warning is not the proximate cause of the harm and the plaintiff's claim must fail."  *Id.*

Inextricably intertwined with the proximate cause analysis of a failure to warn claim is the so-called "learned intermediary rule." *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P.3d 922, 928 (Utah 2003).  This rule recognizes that "manufacturers of prescription drugs have a duty to warn only the physician prescribing the drug, not the end user or patient[,]" because "[t]he physician, after having received complete and appropriate warnings from the drug manufacturer, acts as a learned intermediary between the drug manufacturer and the patient when preparing the drug prescription."  *Id.*  "It is the physician who is best situated to weigh the potential risks associated with a prescription drug against the possible

10

benefits of the drug and the unique needs and susceptibilities of each patient." *Id.*

Some states that have adopted the learned intermediary rule have extended the rule to bar claims based on allegedly inadequate instructions or warnings accompanying a drug when there is no evidence that the prescriber read or relied on the drug's label or instructions. *See In re Wright Med. Tech. Inc., Conservative Hip Implant Prods. Liab. Litig.*, 127 F. Supp. 3d 1306, 1359 (N.D. Ga. 2015) (collecting cases). As the parties concede and to the best of this Court's research on the matter, however, Utah courts have not expressly adopted this application of the learned intermediary rule. *Id.* at 1359 n.56; *see also In re Davol*, 2020 WL 5223363, at *17.

Assuming this is the proper application of Utah's learned intermediary rule, Defendants' argument that it warrants summary judgment fails because it presents a genuine issue of material fact. For starters, Nurse Olds' testimony—that she did not read the Abilify label every time she prescribed it, could not recall reviewing the Abilify label before prescribing the drug to Plaintiff, and continues to prescribe Abilify to patients—is only one part of the evidentiary record. Plaintiff, on the other hand, states in her sworn declaration that she reviewed the information provided by the

11

pharmacy about the drugs she is prescribed and would have raised any warning of compulsive gambling or impulsivity with Nurse Olds when she began gambling or when she reported her gambling problem to Nurse Olds in 2011.[7]  In turn, Nurse Olds testified this would have prompted her to stop prescribing Abilify for Plaintiff and change her medication, either as a matter of medical judgment or if Plaintiff was uncomfortable continuing to take Abilify.

In sum, the record leaves a question of fact for the jury as to whether "a different warning would have caused" Nurse Olds "to alter … her prescribing program for" Plaintiff.  *In re Avandia Mktg., Sales Pracs. and Prods. Liab. Litig.*, 286 F. Supp. 3d 667, 671–72 (E.D. Pa. 2017); *see also Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 277 (5th Cir. 2010) (considering whether there was summary judgment evidence to demonstrate "other ways an adequate warning might have reached [a prescriber] and altered her decision"); *Puldon v. Am. Med. Sys., Inc.*, No. 20-60411-CIV, 2020 WL 6870864, at *5 (S.D. Fla. Oct. 28, 2020); *Dopson-Troutt v. Novartis Pharms. Corp.*, No. 8:06-cv-1708-T-24-EAJ, 2013 WL 1344732, at *4 (M.D. Fla. Apr. 2, 2013).

---

[7] A reasonable jury can infer that the information provided by the pharmacy would include a warning about compulsive gambling or impulsivity if Defendants included it on the Abilify label or package insert.

12

**B.    Plaintiff's Remaining Claims**

Defendants' second argument for summary judgment fares no better.

Defendants attack Plaintiff's remaining claims in "punch list" fashion,

arguing each should be "dismissed" because Plaintiff has either failed to

produce evidence in support of the claim or would otherwise not prevail at

trial.  ECF No. 25 at 30–32.  Defendants, however, ignore their burden at

the summary judgment stage to show "there is an absence of evidence to

support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

In the Eleventh Circuit,[8] "[e]ven after *Celotex*, it is never enough

simply to state that the non-moving party cannot meet its burden at trial."

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  "Instead,

the moving party must point to specific portions of the record in order to

demonstrate that the nonmoving party cannot meet its burden of proof at

trial."  *United States v. Four Parcels of Real Property in Green and*

*Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 n.19

(11th Cir. 1991).  The reason underlying this requirement is simple:

---

[8] The rule of thumb is that the MDL transferee court applies the law of the circuit where it sits to matters of federal law or procedure.  *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996); *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175–76 (D.C. Cir. 1987); *see also Various Plaintiffs v. Various Defendants (Oil Field Cases)*, 673 F. Supp. 2d 358, 363 n.3 (E.D. Penn. 2009) (collecting cases).

13

> [A] movant generally does not satisfy its initial burden simply by
> pointing out to the court that the materials produced in formal
> discovery or the materials in the court file, as they might be
> constituted following the filing of the defendant's motion, *do not
> include* evidence of every essential element of a plaintiff's claim.
> While a plaintiff has the burden to prove its claim *at trial,* Rule 56
> does not imply that a plaintiff has a freestanding obligation to
> reduce to a tangible form and disclose evidence relative to every
> element of its case *prior* to trial, to "prove its case in discovery,"
> so to speak.

*Am. Hospice, Inc. v. Sebelius*, No. 1:08-cv-1879-JEO, 2010 WL 9013005,

at *10 (N.D. Ala. Jan. 27, 2010) (emphasis in original).  Therefore,

Defendants' bald assertions that Plaintiff has failed to produce evidence in

support of her claims or will not prevail on her claims at trial are insufficient

to carry their initial burden at the summary judgment stage.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Defendants'

Motion for Summary Judgment, ECF No. 25, should be **DENIED**.

**IN CHAMBERS** this 28th day of December 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations
must be filed within fourteen (14) days after being served a copy
thereof.  Any different deadline that may appear on the electronic**

**docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.